IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW MEXICO

SHANNON G.,[1]

      Plaintiff,

v.                                                                                                        Civ. No. 21-654 SCY

KILOLO KIJAKAZI,
Acting Commissioner of
Social Security,

      Defendant.

**MEMORANDUM OPINION AND ORDER
FOR SUPPLEMENTAL BRIEFING**

Plaintiff argues that the Commissioner committed error when denying her claim for disability insurance benefits under the Social Security Act, 42 U.S.C. §§ 401-434. Specifically, Plaintiff asserts the ALJ erred by accepting testimony from a vocational expert ("VE") that conflicted with the residual functional capacity and the Dictionary of Occupational Titles. The Commissioner does not argue there three was no conflict. Instead, the Commissioner argues that, even assuming a conflict existed with some of the jobs the VE identified, the VE nonetheless identified at least one job performed in sufficient numbers within the national economy that Plaintiff could perform. In Reply, Plaintiff disputes the Commissioner's assertion that the job identified exists in sufficient numbers in the economy on the basis that the VE did not use a reliable methodology to calculate job numbers. Because the Commissioner has not had the

---

[1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party or parties in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

opportunity to respond to this argument, the Court will allow the Commissioner until November 7, 2022 to file a surreply that addresses this specific argument.[2]

## APPLICABLE LAW

A.  Disability Determination Process

An individual is considered disabled if she is unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A) (pertaining to disability insurance benefits); *see also id.* § 1382c(a)(3)(A) (pertaining to supplemental security income disability benefits for adult individuals). The Social Security Commissioner has adopted the familiar five-step sequential evaluation process ("SEP") to determine whether a person satisfies the statutory criteria as follows:

(1) At step one, the ALJ must determine whether the claimant is engaged in "substantial gainful activity."[3] If the claimant is engaged in substantial gainful activity, she is not disabled regardless of her medical condition.

(2) At step two, the ALJ must determine the severity of the claimed physical or mental impairment(s). If the claimant does not have an impairment or combination of impairments that is severe and meets the duration requirement, she is not disabled.

---

[2] Pursuant to 28 U.S.C. § 636(c), the parties consented to the undersigned to conduct any or all proceedings and to enter an order of judgment. Docs. 3, 7, 8. The Court has jurisdiction to review the Commissioner's final decision under 42 U.S.C. §§ 405(g) and 1383(c). The Court reserves discussion of the background, procedural history, and medical records relevant to this appeal for its analysis.

[3] "Substantial work activity is work activity that involves doing significant physical or mental activities." 20 C.F.R. §§ 404.1572(a), 416.972(a). The claimant's "[w]ork may be substantial even if it is done on a part-time basis or if [she] doe[es] less, get[s] paid less, or ha[s] less responsibility than when [she] worked before." *Id.* "Gainful work activity is work activity that [the claimant] do[es] for pay or profit." *Id.* §§ 404.1572(b), 416.972(b).

> (3) At step three, the ALJ must determine whether a claimant's impairment(s) meets or equals in severity one of the listings described in Appendix 1 of the regulations and meets the duration requirement. If so, a claimant is presumed disabled.
>
> (4) If, however, the claimant's impairments do not meet or equal in severity one of the listings described in Appendix 1 of the regulations, the ALJ must determine at step four whether the claimant can perform her "past relevant work." Answering this question involves three phases. *Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996). First, the ALJ considers all of the relevant medical and other evidence and determines what is "the most [the claimant] can still do despite [her physical and mental] limitations." 20 C.F.R. §§ 404.1545(a)(1), 416.945(a)(1). This is called the claimant's residual functional capacity ("RFC"). *Id.* §§ 404.1545(a)(3), 416.945(a)(3). Second, the ALJ determines the physical and mental demands of the claimant's past work. Third, the ALJ determines whether, given the claimant's RFC, the claimant is capable of meeting those demands. A claimant who is capable of returning to past relevant work is not disabled.
>
> (5) If the claimant does not have the RFC to perform her past relevant work, the Commissioner, at step five, must show that the claimant is able to perform other work in the national economy, considering the claimant's RFC, age, education, and work experience. If the Commissioner is unable to make that showing, the claimant is deemed disabled. If, however, the Commissioner is able to make the required showing, the claimant is deemed not disabled.

*See* 20 C.F.R. § 404.1520(a)(4) (disability insurance benefits); 20 C.F.R. § 416.920(a)(4) (supplemental security income disability benefits); *Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); *Grogan v. Barnhart*, 399 F.3d 1257, 1261 (10th Cir. 2005).

The claimant has the initial burden of establishing a disability in the first four steps of this analysis. *Bowen v. Yuckert*, 482 U.S. 137, 146 n.5 (1987). The burden shifts to the Commissioner at step five to show that the claimant is capable of performing work in the national economy. *Id.* A finding that the claimant is disabled or not disabled at any point in the five-step review is conclusive and terminates the analysis. *Casias v. Sec'y of Health & Human Servs.*, 933 F.2d 799, 801 (10th Cir. 1991).

B.     Standard of Review

The court must affirm the Commissioner's denial of social security benefits unless (1) the decision is not supported by "substantial evidence" or (2) the ALJ did not apply the proper legal standards in reaching the decision. 42 U.S.C. § 405(g); *Hamlin v. Barnhart*, 365 F.3d 1208, 1214 (10th Cir. 2004); *Langley v. Barnhart*, 373 F.3d 1116, 1118 (10th Cir. 2004); *Casias*, 933 F.2d at 800-01. In making these determinations, the court "neither reweigh[s] the evidence nor substitute[s] [its] judgment for that of the agency.'" *Bowman v. Astrue*, 511 F.3d 1270, 1272 (10th Cir. 2008) (internal quotation marks omitted). "[W]hatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (citations omitted). "Substantial evidence . . . is 'more than a mere scintilla.'" *Id.* (quoting *Consol. Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)). "It means—and means only—such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (internal quotation marks omitted).

A decision "is not based on substantial evidence if it is overwhelmed by other evidence in the record," *Langley*, 373 F.3d at 1118 (internal quotation marks omitted), or "constitutes mere conclusion," *Musgrave v. Sullivan*, 966 F.2d 1371, 1374 (10th Cir. 1992). The agency decision must "provide this court with a sufficient basis to determine that appropriate legal principles have been followed." *Jensen v. Barnhart*, 436 F.3d 1163, 1165 (10th Cir. 2005) (internal quotation marks omitted). Therefore, although an ALJ is not required to discuss every piece of evidence, "[t]he record must demonstrate that the ALJ considered all of the evidence" and "a minimal level of articulation of the ALJ's assessment of the evidence is required in cases in which considerable evidence is presented to counter the agency's position." *Clifton v. Chater*, 79 F.3d 1007, 1009-10 (10th Cir. 1996) (internal quotation marks omitted). But where the reviewing court "can follow the adjudicator's reasoning" in conducting its review, "and can determine that

correct legal standards have been applied, merely technical omissions in the ALJ's reasoning do not dictate reversal." *Keyes-Zachary v. Astrue*, 695 F.3d 1156, 1166 (10th Cir. 2012). The court "should, indeed must, exercise common sense." *Id.* "The more comprehensive the ALJ's explanation, the easier [the] task; but [the court] cannot insist on technical perfection." *Id.*

## ANALYSIS

At step 5, the burden shifts to the Commissioner to prove that the claimant can perform other work existing in significant numbers in the national economy. *Raymond v. Astrue*, 621 F.3d 1269, 1274 (10th Cir. 2009). Plaintiff argues that the ALJ failed to reconcile inconsistences between his own finding in the RFC that Plaintiff "can understand, remember and carry out simple instructions that involve non-detailed tasks," AR 110, and the VE's testimony that Plaintiff can perform three jobs existing in significant numbers that, according to the Dictionary of Occupational Titles ("DOT"), [4] require an ability to "[a]pply commonsense understanding to carry out *detailed* but uninvolved written or oral instructions." Doc. 22 at 10 (emphasis added). As explained further below, this is because the jobs identified by the VE, *i.e.,* scrap sorter, industrial cleaner and a store laborer, are classified as reasoning level two in the DOT. *Id.* at 11.

The DOT classifies each listed job according to, among other things, a "reasoning" scale that runs from one to six, with six signaling jobs that call for the most complex reasoning. A reasoning level of two indicates a job that requires the application of "commonsense understanding to carry out detailed but uninvolved written or oral instructions [and d]eal[ing] with problems involving a few concrete variables in or from standardized situations," while

---

[4] The SSA takes administrative notice of the DOT, which is published by the Department of Labor. 20 C.F.R. § 404.1566(d)(1). The SSA accepts the DOT definitions as reliable evidence at step four of a claimant's past work "as it is usually performed in the national economy." Social Security Ruling ("SSR") 82-61, 1982 WL 31387, at *2.

reasoning level one implicates "commonsense understanding to carry out simple one- or two-step instructions [and d]eal[ing] with standardized situations with occasional or no variables in or from these situations encountered on the job." DOT, Appx. C, § III, 1991 WL 688702.

The Tenth Circuit has held that "an ALJ must investigate and elicit a reasonable explanation for any conflict between the Dictionary and expert testimony before the ALJ may rely on the expert testimony as substantial evidence to support a determination of nondisability." *Haddock v. Apfel*, 196 F.3d 1084, 1091 (10th Cir. 1999). After the Tenth Circuit's holding in *Haddock*, the Social Security Administration promulgated Social Security Ruling ("SSR") 00-4p and further clarified the ALJ's affirmative responsibility to ask about such conflicts. SSR 00-4p instructs that

> [w]hen vocational evidence provided by a VE [] is not consistent with information in the DOT, the [ALJ] must resolve this conflict before relying on the VE [] evidence to support a determination or decision that the individual is or is not disabled. The [ALJ] will explain in the determination or decision how he or she resolved the conflict. The [ALJ] must explain the resolution of the conflict irrespective of how the conflict was identified.

2000 WL 1898704, at *4. The Tenth Circuit has applied this rule to conflicts involving reasoning levels in the DOT, stating that reasoning-level-three jobs are incompatible with an RFC for "simple and routine work tasks." *Hackett v. Barnhart*, 395 F.3d 1168, 1176 (10th Cir. 2005). Although *Hackett* does not address whether reasoning level two is in conflict with a limitation to "non-detailed tasks," Plaintiff argues that *Hackett*'s logic compels such a finding given that reasoning level two requires following "detailed" instructions and Plaintiff's RFC is for "simple instructions that involve non-detailed tasks." Doc. 22 at 10-11.

Although the Commissioner states that she is not conceding the existence of a conflict, her brief offers no argument in support of the absence of a conflict. Doc. 24 at 6. The

6

Commissioner bears the burden of proof at step five. Because the Commissioner does not argue there is no conflict, the Court will proceed with its analysis assuming there is a conflict.

Here is where the Commissioner does make an argument. She asserts that, setting aside the jobs of scrap sorter and industrial cleaner, and setting aside the store laborer jobs that require reasoning level 2, the VE testified that sufficient store laborer jobs with a limitation to simple, non-detailed tasks exist that Plaintiff can perform. Doc. 24 at 6-7. Therefore, any error the ALJ made in assigning some work to Plaintiff that Plaintiff cannot perform is harmless.

Plaintiff, in turn, does not challenge the Commissioner's assertion that, if sufficient store laborer jobs that Plaintiff can perform exist in the economy, Plaintiff is not disabled. Instead, Plaintiff argues, first, that the VE did not actually testify the store laborer job conforms with the RFC. Doc. 25 at 3. The Court disagrees with this first argument.

The ALJ began examining the VE by the usual method, i.e., giving a hypothetical RFC and asking about work available to that hypothetical individual:

> My first hypothetical's in the medium range . . . Frequently climb ladders, ropes, or scaffolds. Frequently climb ramps and stairs . . . I want to add that the hypothetical individual is able to understand, remember, and carry out simple instructions, non-detailed tasks . . . . No contact with the public . . . . Any of the past work available to the hypothetical individual?

AR 61. The VE answered that the Plaintiff's past work of cashier and waitress would not be available because those jobs require almost constant interaction with the public. *Id.* The ALJ responded: "any other jobs in the national economy that the hypothetical individual can perform?" *Id.* The VE suggested scrap sorter, laundry laborer, and industrial cleaner. AR 61-62. The VE explained his numbers of jobs were a reduction to account for the occupations requiring more than frequent climbing. AR 62. But then the VE offered another caveat:

> [VE] Of course, some of them are above the simple --
>
> [ALJ] Yes, sir.

> [VE] -- detail, no detail. That job [industrial cleaner] also is medium, unskilled, with an SVP of 2.

*Id*.

Then the ALJ asked the VE to add a restriction to "[a]void concentrated exposure to fumes, odors, dust, gas, and poor ventilation." AR 63. The VE eliminated the laundry laborer job in response, and the ALJ asked the VE to replace that job with another one. *Id.* The VE responded:

> I certainly can. I would suggest that this individual, as you describe, should be able to perform the work of a—well, I have to look here just a minute. Laborer in stores, 922.687-058. Nationwide, 250,000 and again, another reduction of approximately 50 percent because some of these would be above the simple level and some would—might have dealings with the public. That's why this [INAUDIBLE] reduction. It's medium unskilled, with an SVP of 2.

*Id.*

Plaintiff argues that "in doing so, the vocational expert did not claim that the remaining half would be compatible with the hypothetical RFC, just that the assessed limitations (simple, non-detailed work and no interaction with the public) were incompatible with the job requirements, so he arbitrarily cut the number of available jobs in half." Doc. 25 at 2. The Court disagrees with this reading of the testimony. The VE clearly testified that he was reducing the job numbers in half because "some of" the store laborer jobs "would be above the simple level and some would—might have dealings with the public. That's why this . . . reduction." AR 63. And, the VE provided this testimony in response to the ALJ's questions about what jobs respond to the ALJ's hypothetical of an individual who can perform "simple instructions, non-detailed tasks." In other words, the reason the VE excluded store laborer jobs with a reasoning level 2 was to provide the ALJ the number of store laborer jobs that would be consistent with simple, non-detailed work and no interaction with the public.

Plaintiff emphasizes the VE's earlier testimony that "of course, some of them are above the simple— . . . detail, no detail." AR 62; *see* Doc. 25 at 3 ("On the contrary, [the VE] repeatedly confirmed that each of the jobs he cited were incompatible with the 'simple' and 'no detail' restrictions the ALJ found."). Again, the Court disagrees. The testimony on AR 62 that Plaintiff quotes must be read together with the VE's testimony on AR 63, where the VE makes clear that, because some of the store laborer jobs are above the simple level (requiring reasoning level two), he is taking those jobs out of the equation. Accordingly, the VE then clarified that half the store laborer jobs would remain after accounting for the "simple, non-detailed" limitation. Given, this record, the Court disagrees with Plaintiff's interpretation of the VE's testimony. It concludes that the VE testified that 250,000 store laborer jobs exist in the national economy that can be performed at the simple level, a level within Plaintiff's RFC.

The Court, however, is unable to resolve Plaintiff's second argument without further briefing. Also in Reply, Plaintiff mounts a challenge to the reliability of the VE's testimony on several other fronts, such as the source for the job numbers the VE used in the hearing. Doc. 25 at 4-9. An argument can be made that should have included her challenge to the reliability of the VE's estimate of store laborer jobs in her opening brief and, because she didn't, waived the issue by raising it for the first time on reply.[5] The Court, however, concludes that the issue of whether the VE provided reliable testimony about the number of store laborer jobs in the economy did

---

[5] *Stump v. Gates*, 211 F.3d 527, 533 (10th Cir. 2000) ("This court does not ordinarily review issues raised for the first time in a reply brief. The reasons are obvious. It robs the appellee of the opportunity to demonstrate that the record does not support an appellant's factual assertions and to present an analysis of the pertinent legal precedent that may compel a contrary result. The rule also protects this court from publishing an erroneous opinion because we did not have the benefit of the appellee's response."); *United States v. Harrell*, 642 F.3d 907, 918 (10th Cir. 2011) ("arguments raised for the first time in a reply brief are generally deemed waived"); *Berna v. Chater*, 101 F.3d 631, 632-33 (10th Cir. 1996) (recognizing waiver doctrines "are equally applicable in social security cases").

not come into focus until after the Commissioner made its harmless error argument. The Court therefore will not apply waiver doctrines against Plaintiff on this issue.

To provide the Commissioner an opportunity to respond to the argument Plaintiff makes for the first time in Reply, the Court orders that the Commissioner may file an optional surreply. The surreply should be confined to Plaintiff's argument that the VE's testimony is unreliable because (1) analyzing data from the source the VE testified he used to calculate job numbers, Job Browser Pro, results in 3,542 store laborer jobs in the national economy, rather than 250,000, Doc. 25 at 6-7; and (2) the VE's "guesswork" with respect to the methodology for comparing the Job Browser Pro software codes to the DOT job codes lacked the reliability that other Circuits have required and is therefore not substantial evidence, Doc. 25 at 7-8 (citing *Ruenger v. Kijakazi*, 23 F.4th 760, 764 (7th Cir. 2022)).

## CONCLUSION

The Court rejects Plaintiff's arguments to the extent discussed above. With respect to the arguments in Reply concerning the reliability of the VE's job-numbers methodology, the Court provides the Commissioner the opportunity to file a surreply to address those issues as outlined above. The surreply should be no more than 10 pages and is due November 7, 2022, subject to requests for reasonable extensions of time.

*/s/ Steve Yarbrough*
**STEVEN C. YARBROUGH**
**United States Magistrate Judge**
**Presiding by Consent**